UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| Stanton Keith PRITCHARD, as Sellers' Agent, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. _____ ) ) |
| PERNIX Therapeutics Holdings, Inc., | ) ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF PRITCHARD'S ORIGINAL COMPLAINT**

Plaintiff Stanton Keith Pritchard ("Pritchard") files this Original Complaint against Defendant Pernix Therapeutics Holdings, Inc. ("Pernix") respectfully showing the following:

**PRELIMINARY STATEMENT**

1. Pernix acquired Cypress Pharmaceuticals, Inc. on December 31, 2012. On December 15, 2013, Pernix defaulted on its unconditional obligation to the Cypress shareholders to pay $10 million into escrow. Pernix has also announced its inability and unwillingness to pay the Cypress shareholders (in January 2014) for the stock it gave them at closing, also an unconditional obligation of the parties' agreement. In this action, Plaintiff Pritchard, as Sellers' Agent for the Cypress shareholders harmed by Pernix's breach, seeks (1) entry of a preliminary injunction ordering Pernix to pay $10 million into escrow, as it has already agreed to do, in order to prevent irreparable harm to the Cypress shareholders; and (2) judgment on the merits and all associated damages, costs and fees.

2. Pernix and the Cypress shareholders entered into a definitive Securities Purchase Agreement ("SPA") on November 13, 2012, with the closing to occur on December 31, 2012.

Just prior to closing, however, Pernix informed the Cypress shareholders that it could no longer obtain the financing necessary to pay them the agreed upon cash consideration due at closing, and that the deal could not go forward unless the Cypress shareholders agreed to accept substantially less cash up front.

3. In order to save the deal, certain shareholders of Cypress—represented by Pritchard as Sellers' Agent—agreed to reduce the up-front cash consideration they were to receive at closing by $16.5 million and to reduce the aggregate amount due upon the occurrence of an agreed upon milestone event by $5 million. In exchange, Pernix agreed to increase the value of the stock consideration by $21.5 million, and to grant each recipient of shares of Pernix common stock the right to require Pernix to purchase all or any portion of the shares still held on the first (1st) anniversary of the issuance of the shares at a price calculated to equal $5.38 per share. (As of September 30, 2013, of the 4,427,084 shares of Pernix common stock issued to the Cypress shareholders as stock consideration, 3,565,692 shares were still held by the Cypress shareholders, with the put right being exercisable from January 1, 2014 to January 31, 2014.) On December 15, 2013, pursuant to the terms of the SPA, Pernix was obligated to pay deferred cash consideration of $5.5 million to the Cypress shareholders and $4.5 million into escrow.

4. Pernix has now defaulted on its obligation to pay the deferred cash consideration and to deposit the escrow funds, and has publicly disclosed its inability to meet its put obligations due in January 2014. As a pretext for reneging on its payment obligations, Pernix has asserted various baseless indemnification claims against the Cypress shareholders. However, the agreements between the parties make clear that, irrespective of any such claims, Pernix must pay the entire $10,000,000 balance due into an escrow account pending resolution of all such claims, which it has failed to do.

## PARTIES

5. Plaintiff Pritchard is an individual with a principal residence in Denver, Colorado. Pursuant to Section 9.12 of the SPA between Pernix and the former shareholders of Cypress, Pritchard is the designated agent for a group of former Cypress shareholders, with full legal authority to act on their behalf with respect to all matters relating to the claims herein, including the authority to bring suit on their behalf. The former Cypress shareholders represented by Pritchard as Sellers' Agent are: Max Draughn, Stanton Keith Pritchard, Christopher Pinto, Thomas Hixon, Jason Matthew Sanderson, Robert Leon Lewis, II, James Christopher Boone, Christopher Alan Smith, Glenn Alton Pruitt, and Gregory Thomas Stofko.

6. Defendant Pernix is a Maryland corporation with its principal place of business in Houston, Texas. Pernix is a specialty pharmaceutical company primarily focused on the sales, marketing, manufacturing and development of branded, generic and OTC pharmaceutical products.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Pritchard and Pernix are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

8. Venue of this action is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

**The parties' agreement and Pernix's eleventh hour alteration of its terms.**

9. Under the original SPA dated November 15, 2012, Pernix agreed to pay $78.5 million in cash and $12.5 million in Pernix stock, plus up to $10 million in milestone payments, to Cypress's shareholders for all issued and outstanding shares of Cypress capital stock. Of the

$78.5 million in cash, Pernix was to pay $68.5 million at closing, and the balance, net of post closing claims, on December 15, 2013. A complete copy of the SPA is attached hereto as **Exhibit A**.

10. However, in December 2012 shortly before the transaction was set to close, Pernix informed Cypress that it was unable to obtain the financing necessary to meet its agreed upon cash payment obligations under the SPA. A copy of amendments to the SPA is attached hereto **Exhibit B**.

11. As a result, Cypress and its shareholders agreed to dramatically alter the payment terms of the transaction by reducing the up-front cash consideration they were to receive at closing by $16.5 million and to reduce the aggregate amount due upon the occurrence of an agreed upon milestone event by $5 million. In exchange, Pernix agreed to increase the value of the stock consideration by $21.5 million, and pursuant to Section 5.19 of the SPA (as amended) granted each recipient of shares of Pernix common stock the right to require Pernix to purchase all or any portion of the shares still held on the first (1st) anniversary of the issuance of the shares at a price of $5.38 per share as determined by an agreed upon formula. These new terms were reflected in an amendment to the SPA. *See* **Exhibit B**.

**Pernix experiences financial difficulties and then defaults on the deferred payment to the Cypress shareholders.**

12. Pernix began to experience financial problems in early 2013.

13. In May of 2013, Pernix reported in its 10-Q for the first quarter of 2013 that it had to renegotiate its credit agreements, and as a result, had become more leveraged. *See* Pernix 10-Q (filed 5/10/13) attached hereto as **Exhibit C**. At the same time, Pernix reported to its shareholders the potential, negative consequences of the increased leverage and having to fulfill its obligations to the former Cypress shareholders. In the "Management's Discussion and

4

Analysis of Financial Condition and Results of Operations" section of the 10-Q, Pernix informed the investing public that:

> [T]he Company's ability to execute all of its development programs and other business strategies during 2013 may be limited by the financial covenants contained in our credit agreement, the additional consideration payable to the former stockholders of Cypress in December 2013 and the potential exercise of put rights by such former stockholders of Cypress in January 2014, each as described above.

*Id* at 45.  In "the Risk Factors" section of the 10-Q, Pernix reported that there had been material changes from the risk factors previously disclosed in its Annual Report on Form 10-K, stating, in part, that:

> After giving effect to the $12.0 million payment of outstanding indebtedness in connection with our entry into an amended and restated credit and guaranty agreement with our lenders on May 8, 2013, we currently do not have sufficient cash available to repurchase the shares in the event that the put rights are exercised. In the event the put rights are exercised with respect to some or all of the stock issued to the former holders of Cypress and the Company lacks the necessary capital to repurchase these shares, we may seek to raise additional capital through public or private equity offerings, debt financings, corporate collaboration and licensing arrangements, a sale of selected assets, or other financing alternatives. Equity or debt financing, or corporate collaboration and licensing arrangements, may not be available on acceptable terms, if at all. The exercise of any of these put rights may have a material adverse effect on our business and financial condition.

*Id*. at 49.

14.     In its third quarter 10-Q filed on November 12, 2013, Pernix continued to publicly disclose its financial problems, and specifically its inability to satisfy its deferred payment obligations to the Cypress shareholders.  *See* Pernix 10-Q (filed 11/12/2013) attached hereto as **Exhibit D**.  That report confirmed that Pernix lacked the financial wherewithal to satisfy its obligations to the former Cypress shareholders, and was anticipating not meeting those obligations.  The management of Pernix specifically acknowledged this in the "Risk Factors" section of the report:

> If the former stockholders of Cypress exercise their put rights, our business and financial condition may be materially adversely affected. . . . We currently do not have sufficient cash available to repurchase the shares in the event that the put rights are exercised and we acknowledge validity. . . . [W]e may be unable to meet certain contingent obligations relating to this matter and our liquidity may be impaired.

*Id*. at 44.

Pernix expressed the same concerns in the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of the report. *See id*. at 40.

15. Pernix defaulted on its obligation under the SPA by failing to make the $5.5 million payment due to the former Cypress shareholders Plaintiff represents and the $4.5 million payable into the Escrow Account on December 15, 2013. By its own admission, Pernix will not be able to meet it obligations to repurchase its shares from the Cypress shareholders at the agreed upon put price in January 2014.

**Pernix's unfounded and unperfected indemnity claims do not excuse its obligation to pay the amounts owed to the Cypress shareholders or into escrow.**

16. In light of its deteriorating financial position, and anticipating its inability to pay the amounts due the Cypress shareholders, Pernix has embarked on a strategy to avoid those obligations altogether by asserting baseless indemnity claims against the Cypress shareholders.

17. On August 16, 2013, Pernix (through counsel) sent a letter to Plaintiff purporting to be a notice of various indemnity claims by Pernix under the SPA. This notice failed to satisfy the procedural and substantive requirements of a valid indemnity claim set forth in the SPA. Among other matters, it did not even identify the amounts of Pernix's supposed claims. A true and accurate copy of Pernix's correspondence is attached hereto as **Exhibit E**.

18. On September 13, 2013, Plaintiff responded to Pernix's correspondence, identifying the shortcomings of its purported claims and requesting additional information. A true and accurate copy of the 9/13/2013 letter is attached hereto as **Exhibit F**.

19.     Pernix did not respond to Plaintiff's letter, never supplied the requested information, and never filed suit or took any other action to pursue its alleged indemnification claims. Accordingly, none of the indemnification claims asserted by Pernix has been resolved under the procedures required by the SPA or otherwise.

20.     Rather, on the last business day before its deferred payment of $5.5 million to the Cypress shareholders and $4.5 million into the Escrow Account was due, Pernix sent another letter to Plaintiff purporting to be an additional indemnity claim based upon product returns allegedly in the amount of $6,636,651.13. *See* 12/13/2013 Pernix Letter attached hereto as **Exhibit G**. Pernix did not provide any support for this claim. This claim is preposterous on its face, as the amount of returns claimed exceeds by more than 300% the reserve established by Cypress based upon historical data and returns experience. Pernix further asserted in this letter that its alleged claim excuses any obligation to make the required payments to the Cypress shareholders – even though the merits of this claim, if any, have not been resolved as required by the SPA.

21.     Pernix well knows that this assertion is untrue, as the SPA expressly requires Pernix to pay any unresolved portion of the $5.5 million in deferred payments into an escrow account. The parties anticipated and extensively negotiated this issue, which they specifically addressed in Section 1.4(c)(ii) of the SPA. *See* **Exhibits A & B**. Under that provision, even if Pernix had legitimate indemnity claims against the Cypress shareholders, which Plaintiff denies, it is still required to pay the amounts of such claims into an escrow account to the extent they remain unresolved by December 15, 2013. The parties executed an Escrow Agreement governing the terms of the Escrow Account. *See* **Exhibit A** (Exhibit 1.3(a) to the SPA) attached to the Complaint. Pernix has not made any payments into the Escrow Account. The SPA

provides for specific performance as the sole remedy for any breaches under the contract. *See* **Exhibit A**, Article 7.9.

22. Pernix's management also blatantly misrepresented to its own shareholders its obligations to the Cypress shareholders. Pritchard attended an earnings call held by Pernix on November 12, 2013. On that call, Michael Pearce, Pernix's Chairman, President and Chief Executive Officer, referred to Pernix's put obligation to the Cypress shareholders as "contingent consideration," and suggested that it was somehow subject to or offset by Pernix's indemnity claims. *See* Transcript of 11/12/2013 Pernix Earnings Call, attached hereto as **Exhibit H**, at p. 9. This is patently false, as Pernix well knows. Pernix's put obligations are absolute, and not contingent upon (or subject to offset by) any indemnification claims. *See* **Exhibits A** & **B**, *supra*. Pernix further misled its shareholders by failing to report that its $10 million payment obligation due on December 15, 2013 was not contingent upon (or subject to offset by) any unresolved indemnification claims.

## COUNT ONE - BREACH OF CONTRACT

23. Pritchard incorporates paragraphs 1 through 22 as if fully restated herein.

24. The SPA (as amended) and Escrow Agreement are valid, enforceable contracts between the parties. Pernix has breached its obligations under these agreements by failing to pay the Cypress shareholders the moneys due them on December 15, 2013, and/or by failing to pay the amount of any disputed indemnity claim into the Escrow Account.

## COUNT TWO – SPECIFIC PERFORMANCE

25. Pritchard incorporates paragraphs 1 through 24 as if fully restated herein.

26. The SPA (as amended) and Escrow Agreement are valid, enforceable contracts between the parties. By failing to pay the Cypress shareholders the moneys due them on

December 15, 2013, and/or by failing to pay the amount of any disputed indemnity claim into the Escrow Account, Pernix has breached its obligations under these agreements.

27. Absent intentional misrepresentation or fraud claims, the SPA provides for specific performance as the sole remedy for any breaches under the contract. Accordingly, specific performance of Pernix's obligations is appropriate and required under the SPA.

### COUNT THREE – ATTORNEYS' FEES

28. Pritchard incorporates paragraphs 1 through 27 as if fully restated herein.

29. Pursuant to Texas Civil Practice and Remedies Code § 38.001, Pritchard is entitled to recover his reasonable and necessary attorneys' fees and costs associated with this action.

### PRAYERS FOR RELIEF

For the reasons set forth herein, Plaintiff Pritchard requests that this court grant the following relief:

1. Issue a preliminary injunction ordering Defendant Pernix to pay $10 million into the Escrow Account established by the parties for that purpose, pending a resolution of Plaintiff's indemnification claims on the merits.

2. Enter judgment in favor of Plaintiff Pritchard on all claims, and award to him:

   a. Actual damages;

   b. Consequential damages;

   c. Interest, attorneys' fees and costs to the fullest extent allowable by law; and

   d. All other relief the Court deems just and appropriate.

        Respectfully submitted,

        By:  /s/ *Timothy S. McConn*
        Timothy S. McConn
        Fed. I.D. No. 32228
        Texas State Bar No. 24032713
        ANDREWS KURTH LLP
        600 Travis, Suite 4200
        Houston, TX 77002
        Tel: (713) 220-4773
        Fax: (713) 238-7404
        timmcconn@andrewskurth.com

        ATTORNEY IN CHARGE FOR
        PLAINTIFF STANTON KEITH
        PRITCHARD

OF COUNSEL:

Lauren Chapman
Fed. I.D. No. 1008869
Texas State Bar No. 24065033
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX  77002
laurenchapman@andrewskurth.com
Tel: (713) 220-4200
Fax: (713) 220-4285

and

Michael T. Gass
Fed. ID. No. 803031
BBO #546874
Diana T. Huang
BBO #679084
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel: (617) 248-5000
mgass@choate.com
dhuang@choate.com

Dated:  December 18, 2013